NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAWN RESTAURANT, INC., et al.,** | Civil Action No. 10-2273 (MLC) |
| **Plaintiffs,** | |
| v. | **MEMORANDUM OPINION** |
| **PENN MILLERS INSURANCE COMPANY,** | |
| **Defendants.** | |

This matter comes before the Court upon Defendant Penn Millers Insurance Company's ("Defendant" or "Penn Millers") Motion to Amend its Answer to assert counterclaims against Plaintiff Dawn Restaurant ("Plaintiff"). Plaintiff opposes Defendant's motion. The Court has fully reviewed and considered all arguments made in support of and in opposition to Defendant's motion. The Court considers Defendant's motion without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth more fully below, Defendant's motion is GRANTED.

**I.       Background and Procedural History**

This is an insurance coverage case concerning claimed damage to the roof of Plaintiff's restaurant building. Notice of the loss was first given to Penn Millers on November 25, 2008. At that time, and at subsequent times throughout discovery, Plaintiff claimed that the loss occurred on August 14, 2008 and provided an estimate for repairs in the amount of $139,770.00. Penn Millers sent an independent adjuster to investigate the claimed loss and retained the services of an engineer to inspect the premises. Based on the report submitted by the engineer, Penn Millers determined that the damage to the roof had developed over a period of years and was not due to a single occurrence.

As a result of the investigations and the engineer's report, Penn Millers denied coverage of Plaintiff's claim. Plaintiff filed a Complaint in state court against Penn Millers for breach of contract. The case was thereafter removed to this Court. The parties have since engaged in significant discovery. Plaintiff filed its Amended Complaint on August 17, 2011 in which it added a claim against Defendant for bad faith and Defendant filed its Answer to the Amended Complaint on August 31, 2011. Defendant now files this motion seeking to amend its Answer to the Amended Complaint in order to assert counterclaims against Plaintiff.

Defendant states that, through discovery and through significant investigation, evidence has come forward which indicates that Plaintiff made significant misrepresentations in the insurance claim submitted to Penn Millers, in its Complaint(s) filed against Penn Millers and in the discovery responses provided to Penn Millers. Specifically, Defendant asserts that Plaintiff was dishonest regarding the actual cost of repairing the damage to the roof; that Plaintiff was dishonest about the date of loss; and that Plaintiff was dishonest about the existence of, and it's knowledge of, damage to the roof prior to the claimed date of loss. Defendant asserts that this alleged fraud provides sufficient basis for a counterclaim against Plaintiffs alleging violations of the New Jersey Fraud Protection Act ("the Act").

Plaintiff opposes Defendant's Motion to Amend. Plaintiff notes that, although motions to amend are generally liberally granted, Defendant's motion should be denied because Defendant's counterclaims would fail as futile. *See Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Plaintiff first states that Defendant cannot prove that it was damaged as a result of Plaintiff's alleged violation of the Act; a showing which Plaintiff contends is required in order to assert a claim under the Act. Plaintiff also argues that Defendant relies upon "unwarranted inferences" and "unsupported conclusions" as evidence of the alleged fraud. As a result, Plaintiff states that the Court should not

accept Defendant's reasoning as a proper basis for a counterclaim and deny its motion because it fails the futility standard.

### A. Difference in Estimate for Repairs and Amount Paid for Repairs

Plaintiff first reported the estimate for the cost of repairs as $139,770.00. In the course of discovery, Defendant requested from Plaintiff copies of actual checks paid to the construction company who performed the repairs, JAG Construction ("JAG"). The checks produced totaled only $73,300.00. When confronted with the discrepancy, Plaintiff explained that the difference was due to the fact that they ran out of money and that the amount paid was for the work done, which was merely a subset of the total work contained in the estimate. Defendant is not persuaded by Plaintiff's explanation for the discrepancy in the figures because Plaintiff was unable to elaborate on the work contained in the estimate which was not performed. Further, Defendant asserts that this explanation is not corroborated by the testimony of agent for JAG which reveals that JAG reduced the estimate shortly after beginning construction because the work proved to be easier than anticipated.

Defendant also states that Plaintiff knew at the time they submitted their insurance claim that the repairs would cost closer to $73,300.00, yet they continued to represent that the repairs were going to cost $139,770.00. Defendant points to a letter from Plaintiff's public adjuster in which he advised a representative for Plaintiff to revise the estimate to Penn Millers to $77,000.00. In addition, Defendant notes that a representative for Plaintiff admitted that the price reduction was known to Plaintiff before the loss was submitted to Penn Millers.

Plaintiff asserts that Penn Millers has not set forth facts which prove that it was damaged by Plaintiff's alleged violation of the Act. Plaintiff states that Defendant denied Plaintiff's claim prior to completion of the repair and prior to any final payment was provided to JAG. Therefore, Plaintiff reasons that the decision to deny coverage was based on Penn Millers' interpretation of its polity

rather than on any dollar amounts provided by Plaintiff.  As a result, Plaintiff argues that Defendant can not show any damages even if its allegations regarding the inaccurate estimate are taken as true.

Further, Plaintiff asserts that it filed this suit because it disagreed with Penn Millers' interpretation of the policy language and that if it is successful in this action, Defendant "will possibly have to reimburse Plaintiff for the amounts paid" to JAG.  Conversely, if Defendants win, Plaintiff states that "they will pay nothing."  Thus, Plaintiff reasons that the fact that discovery revealed an amount paid for repairs which was different than the estimate first provided does not show that Defendant has been damaged by any alleged action taken by Plaintiff.  As such, Plaintiff concludes that Defendant's claim is futile in this respect.

### B. Date of Loss

Plaintiff first reported the date of loss as August 14, 2008.  Defendant states that, through discovery, evidence of pre-existing damage was uncovered which indicates that the date of loss was at least 2 months prior to that date.  Defendant further asserts that evidence exists which suggests that Plaintiff knew that the date of loss was before the August 2008 date, yet they continued to represent the August date as the date of loss.  Defendant states that this evidence was uncovered when, through discovery, Plaintiff revealed another witness, Nini Construction ("Nini"), which Defendant subpoenaed.

Through the Nini deposition and through records produced by Nini, it was revealed that Plaintiff had signed a contract with a structural engineer, Brian McGlade in late August 2008, soon after the date of loss reported in the insurance claim.  In the course of further depositions and discovery, Mr. McGlade revealed his opinion that, after the roof had already sagged, a roof drain was added to clear the resulting low spot on the roof of any standing water.  Mr. McGlade believed that

this roof drain was added some time prior to the claimed August 2008 time frame. Defendant points to the addition of the roof drain prior to August 2008 as evidence of pre-existing damage and as evidence of Plaintiff's knowledge of the damage.

Documents produced by Nini also included an invoice from a "Structural Engineering Service provided by Phil Paul" whom Nini claimed was involved with another project and not Plaintiff's roof. Upon investigating further into the invoice related to Phil Paul, Defendant discovered that Mr. Paul was, in fact, involved exclusively with Plaintiff's roof and that he had inspected the existing roof damage in June 2008.[1] The documentation produced by Mr. Paul was a report written by Mr. Paul to Plaintiff dated June 12, 2008, which is two months prior to the reported date of loss. Plaintiff's failure to disclose this information leads Defendant to conclude that Plaintiff "engaged in repeated misrepresentations, repeatedly made misleading statements and engaged in concealment" of Mr. Paul's identity in an effort "to misrepresent the date of loss as having occurred in August."

In response to this information, Plaintiff again asserts Defendant has not set forth any facts which would prove that it has been damaged under the Act by any alleged action; therefore, Defendant's motion fails under the futility standard. Plaintiff argues that its representatives remembered first discovering the damage during the summer of 2008. Thus, Plaintiff states that its relationship with Nini, the contract with Mr. McGlade, and the June 2008 letter from Mr. Paul are entirely consistent with Plaintiff's initial allegations.

Plaintiff also argues that its policy with Penn Millers was in place from December 2007 to December 2008; therefore, it is not relevant whether the date of loss was in August or June, because

---

[1] Defendant points out that at no time did Plaintiff attempt to correct Nini's denial that Mr. Paul was not involved with the roof.

either date falls within the terms of the policy. Plaintiff further states that Penn Millers disclaimed coverage, in part, based on Plaintiff's failure to provide timely and proper notice and they point to Defendant's Certification which states, "first notice of the loss to Penn Millers was provided over three months after the loss was first observed." As a result, Plaintiff reasons that Defendant "was in no way damaged by a two month difference in the date of loss reported versus when Mr. Paul wrote his letter."

In their Reply, Defendant clarifies that it is *not* claiming that the date of loss occurred 2 months prior to the date reported by Plaintiff, but that it is apparent that the date of loss occurred sometime prior to June 12, 2008. Also, Defendant states that Plaintiff repeatedly gave written confirmation of the August 2008 date of loss and that the "Summer 2008" time frame was used by representatives for Plaintiff who claimed lack of recollection during a deposition nearly 2 years after the date of loss. Further, Defendant points out that they did *not* base their decision to deny the claim, in any part, on the delay between the date of reporting and the date of loss. Indeed, the record shows that Defendant simply reserved its right to do so at a later time.

### C. The Third Drain

As mentioned above, Mr. McGlade's inspection of the roof revealed that there were 3 roof drains and it was Mr. McGlade's opinion that a roof drain was added some time prior to the claimed August 2008 time frame. Faced with the possibility of pre-existing damage, Defendant propounded additional discovery on Plaintiff with the Court's permission. In response to those Interrogatories, Plaintiff denied ever having a roof drain installed during its 20 year ownership of the building. However, the June 12, 2008 letter from Mr. Paul indicates that only 2 roof drains were present on the roof at that time. Defendant asserts that the discrepancy in the reports and the number of roof

drains is further indication that Plaintiff provided false information and additional evidence that Plaintiff knew of the pre-existing damage to the roof.

Plaintiff argues that Defendant makes an impermissible leap between the presence of the third drain and the conclusion that Plaintiff installed this drain "in direct response to the damage that Plaintiff seeks coverage for in this action." Plaintiff asserts that "there is no expert opinion of any kind from anyone that establishes that connection." Plaintiff contends that the information provided by Defendant does not constitute evidence of fraud and does not support its inferences or allegations. Plaintiff reminds the Court that it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Plaintiff points out that Mr. Paul's letter establishes that there are only 2 drains in the "central area," but does not make comment as to how many drains are on the entire roof. Also, Plaintiff states that Mr. McGlade admitted that he had no actual knowledge as to why the roof drain was installed. For these reasons, Plaintiff believes that Defendant is unable to establish a fraud claim because it is based on unwarranted inferences and conclusions. Thus, Plaintiff argues that Defendant's motion be denied in this respect because it again fails the futility standard.

## II.     Analysis

Pursuant to FED.R.CIV.P. 15(a)(2), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith,

prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard (*see Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This is a logical standard to apply because an amended complaint is a new pleading and needs to satisfy the same standard. When considering whether a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In essence, the facts alleged must be sufficient to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

While a pleading does not need to contain "detailed factual allegations," a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. *Twombly*, 550 U.S. at

555 (citation omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Moreover, although the Court must, in assessing a motion to dismiss, view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Here, Plaintiff argues that Defendant's proposed amendment would fail as futile under the Act. The relevant portions of the Act state that a person has violated the Act in section N.J.S.A. 17:33A-4 if he:

> (1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c. 174 (C.39:6-61 et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

> (2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, the Unsatisfied Claim and Judgment Fund or any claimant thereof in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy or the "Unsatisfied Claim and Judgment Fund Law," P.L.1952, c. 174 (C.39:6-61 et seq.), knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or

> (3) Conceals or knowingly fails to disclose the occurrence of an event which affects any person's initial or continued right or entitlement to (a) any insurance benefit or payment or (b) the amount of any benefit or payment to which the person is entitled;

> (4) Prepares or makes any written or oral statement, intended to be presented to any insurance company or producer for the purpose of obtaining:
>     (a) a motor vehicle insurance policy, that the person to be insured maintains a principal residence in this State when, in fact, that person's principal residence is in a state other than this State; or
>     (b) an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract; or

> (5) Conceals or knowingly fails to disclose any evidence, written or oral, which may be relevant to a finding that a violation of the provisions of paragraph (4) of this

subsection
 (a.) has or has not occurred.
 (b.) A person or practitioner violates this act if he knowingly assists, conspires with, or urges any person or practitioner to violate any of the provisions of this act.
 (c.) A person or practitioner violates this act if, due to the assistance, conspiracy or urging of any person or practitioner, he knowingly benefits, directly or indirectly, from the proceeds derived from a violation of this act.
 (d.) A person or practitioner who is the owner, administrator or employee of any hospital violates this act if he knowingly allows the use of the facilities of the hospital by any person in furtherance of a scheme or conspiracy to violate any of the provisions of this act.
 (e.) A person or practitioner violates this act if, for pecuniary gain, for himself or another, he directly or indirectly solicits any person or practitioner to engage, employ or retain either himself or any other person to manage, adjust or prosecute any claim or cause of action, against any person, for damages for negligence, or, for pecuniary gain, for himself or another, directly or indirectly solicits other persons to bring causes of action to recover damages for personal injuries or death, or for pecuniary gain, for himself or another, directly or indirectly solicits other persons to make a claim for personal injury protection benefits pursuant to P.L.1972, c. 70 (C.39:6A-1 et seq.); provided, however, that this subsection shall not apply to any conduct otherwise permitted by law or by rule of the Supreme Court.

Also, relevant is section N.J.S.A 17:33A-7 which states:

"Any insurance company damaged as the result of a violation of any provision of this act may sue therefor in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorneys fees."

Here, Plaintiff asserts that, in order to avoid dismissal of its motion to amend for futility, Penn Millers must allege facts that, if proven, would establish that Plaintiff violated the Act and that Penn Millers was damaged by said violation. The Court agrees with Plaintiff in this respect.[2]

---

[2] The Court notes that a showing of damages is not an element of violation of the Act. Thus, Plaintiff in this case may still face penalties for violation of the Act irrespective of the Court's ruling on Defendant's motion. However, damages as a result of the violation are a precondition for an insurance company to seek relief under the Act.

### 1. Repair Estimate and Date of Loss

With respect to the inflated estimate and the inaccurate date of loss, Defendant's allegations, when taken as true, certainly set forth facts which could indicate that Plaintiff has violated the Act. Both parties seem to be in agreement on that point. The disagreement arises over the issue of whether or not Defendant was damaged by these alleged violations.

Plaintiff's argument, in essence, is that Defendant denied coverage based on its interpretation of the policy and *not* on any allegedly false information which Plaintiff provided. Thus, Plaintiff concludes that Defendant was not damaged by any alleged violations of the Act. As Defendant points out, Plaintiff does not cite to any case law in support of their position and, indeed, their argument is misguided.

In reviewing the Act, it is clear that there is no requirement that a misrepresentation which caused damage to an insurance company serve as a basis for denying a claim. Rather, the misrepresentation which caused damage to an insurance company must concern information which is "material" to the claim. Plaintiff does not specifically raise the materiality issue; however, it is relevant to this discussion so the Court will briefly address it.

The Court first looks to the cases cited by Defendant; namely *Longobardi v. Chubb Ins. Co. of New Jersey* and *Thomas v. New Jersey Insurance Underwriting Association*. 121 N.J. 530 (N.J.,1990) and 277 N.J. Super. 630 (Law Div. 1994). Although those cases are factually distinguishable from the case currently before the Court, they stand for the proposition that a misrepresentation in violation of the Act need not be decisive or significant in the ultimate disposition of an insurance claim. The logic behind this interpretation goes to the remedial and preventative nature of the Act. Indeed the Court noted in *Longobardi*:

> The right rule of law, we believe, is one that provides insureds with an incentive to tell the truth. It would dilute that incentive to allow an insured to gamble that a lie will turn out to be unimportant. The focus, therefore, should be on the time when the insured is about to let loose the lie. An insured's misstatement is material if when made a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action. *See Claflin, supra,* 110 *U.S.* at 95-97, 3 *S.Ct.* at 515-16, 28 *L.Ed.* at 82; *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179, 183 (1984)*; Long, supra,* 670 *F.*2d at 934; *Cummings v. Farmers Ins. Exch.,* 202 *Cal.App.*3d 1407, 1416-17, 249 *Cal.Rptr.* 568, 573 (1988); *Allison v. State Farm Fire & Casualty Co.,* 543 *So.*2d 661, 663-64 (Miss.1989). In effect, materiality should be judged according to a test of prospective reasonable relevancy.
>
> *Longobardi* at 541, 542.

Thus, whether Penn Millers based their decision of denial on alleged misrepresentations made by Plaintiff or on other grounds is irrelevant. It is only necessary that the misrepresentations were material and that Penn Millers suffered damages as a result of those misrepresentations. Defendant sets forth arguments as to why the misrepresentations are material. Plaintiff does not challenge the materiality of the alleged misrepresentations and, in fact, recognizes the significant relevance of the date of loss. Therefore, the Court finds that Defendant has alleged facts which support a conclusion that Plaintiff misrepresented material information.

Irrespective of the materiality issue, Plaintiff argues that Penn Millers has not suffered any damages. However, it appears that Plaintiff misses the gist of Defendant's argument: that participation in this allegedly fraudulent litigation and the related legal investigation is damage in itself. Indeed, much of Defendant's motion focuses on Plaintiff's inappropriate conduct and fails to explain exactly how it suffered damaged as a result of that conduct. However, Defendant clarifies in its Reply brief that it engaged in significant "effort and expense" in order to overcome the

"hurdles" and "obstacles" set up by Plaintiff.  Also, Defendant sets forth its claims for damages in its proposed Amended Answer and Counter-claims; specifically, the claims that Defendant incurred investigation expenses, costs of suit, and attorneys' fees as a result of the Plaintiff's engagement in insurance fraud.  Thus, Defendant has asserted damages and has sufficiently pled the elements of N.J.S.A. 17:33A-7.

### 2. The Third Drain

Plaintiff's argument with respect to the third drain is that Defendant has based its claim on unsupported inferences and allegations which the Court should not accept.  *See Baraka* 481 F.3d at 211.  The Court finds this argument unpersuasive.  Defendant has introduced facts which could support a conclusion that a third drain was installed and/or that Plaintiff was aware of the damage to the roof prior to the August 2008 time frame due to the existence of the drain.  Defendant has sufficiently pled its claim.  Any challenge to the weight of the evidence in this respect can be properly brought in a motion for Summary Judgment.

### III.   Conclusion

For the reasons stated above, Defendant's motion to amend their Answer to assert Counter-claims against Plaintiff is GRANTED.  An appropriate Order follows.

Dated: October 18, 2011

                                                   s/  Tonianne J. Bongiovanni
                                       **HONORABLE TONIANNE J. BONGIOVANNI**
                                       **UNITED STATES MAGISTRATE JUDGE**